IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2023 at Knoxville

**STATE OF TENNESSEE v. STEVEN RAY CROCKETT**

**Appeal from the Circuit Court for Rutherford County**
**No. 76996    Barry Tidwell, Judge**

_____

**No. M2023-00388-CCA-R3-CD**

_____

The defendant, Steven Ray Crockett, appeals his Rutherford County Circuit Court jury conviction of aggravated robbery. On appeal, the defendant asserts that the evidence is insufficient to support his conviction and that the trial court erred by imposing a 12-year sentence, by ordering the sentence to run consecutively to his prior felony conviction from Virginia, and by accrediting only a portion of his pretrial time served in incarceration. Because the trial court's imposition of consecutive sentencing was superfluous and because it failed to properly accredit the defendant's pretrial jail credits, we reverse and remand for entry of a corrected judgment on these issues. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed in Part; Reversed and
Remanded in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W.
WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Taylor Dale Payne, Murfreesboro, Tennessee, for the defendant, Steven Ray Crockett.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Eric Farmer and Trevor Lynch, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Rutherford County Grand Jury charged the defendant with one count of aggravated robbery of a Mapco gas station in LaVergne, Tennessee, that occurred on November 9, 2016.

At the defendant's May 2021 trial, MacKayla Rembert testified that she previously worked as a cashier at the Mapco gas station located on Waldron Road in LaVergne. She testified that on November 9, 2016, she arrived at work between 2:30 and 3:00 p.m. and was the sole employee present until approximately 8:00 p.m. As she was assisting a customer with a purchase, she observed the defendant enter the store. After concluding the transaction, she moved to sit on a set of crates behind the cash register, where she remained until the defendant approached her. Upon standing, she saw the defendant carrying two 20-ounce beer cans and pointing a loaded revolver at her. Ms. Rembert testified that the defendant demanded that she give him "all the money that you have in your register." She recalled being so shocked that she did not immediately respond, which prompted the defendant to repeat his demand. Ms. Rembert testified that she opened the register and lifted its drawer, allowing the defendant to gather the cash stored therein. She estimated that the defendant stole $37 from the register. Ms. Rembert then watched as the defendant left the store and drove away in a large red Chevrolet sport utility vehicle. She thereafter called 9-1-1.

Ms. Rembert testified that when the police arrived, she exited the store, smoked a cigarette, and provided a statement. She later did a follow-up interview in which she identified the defendant from a photographic array. She also assisted the LaVergne Police Department in reviewing the store's surveillance video footage, which was played for the jury.

Ms. Rembert described the robber as a younger African American gentleman wearing a grill in his mouth. She noted that he had a wide nose, a moustache, and a beard. She also stated that he wore no facial covering.

On cross-examination, Ms. Rembert testified that when the defendant approached her to rob the store, he leaned over the register, placing them within two feet of one another. She stated that she obeyed the defendant's requests because her employee training had taught her that "nothing in the store is worth your life." She was unsure whether the defendant's mouth grill was gold or silver.

Special Agent Joel Wade of the Tennessee Bureau of Investigation testified as an expert in digital forensics. He testified that a cell phone was sent to his office for examination in relation to the robbery and that an extraction was performed by Special Agent Douglas Williams, who had since retired. Special Agent Wade reviewed Special Agent Williams' work and identified a text message recovered from the cell phone. This text message was introduced via Detective Kevin Stolinsky's testimony.

Detective Stolinsky of the LaVergne Police Department's Investigations Division testified that he responded to the November 9, 2016 robbery. He reviewed the store's surveillance video footage and obtained still photographs of the defendant's license

plate. He noted that the surveillance video footage indicated that the defendant wore a Vanderbilt baseball cap during the robbery. Detective Stolinsky recalled that between November 11 and 12, his office received a tip claiming that the defendant had used his father's red Chevrolet Suburban to rob the Mapco on Waldron Road. He also testified that Ms. Rembert identified the defendant from a photographic array between November 11 and 13, and that he and his office thereafter attempted to locate the defendant.

Detective Stolinsky testified that on November 18, 2016, he unsuccessfully attempted to locate the defendant at the defendant's parents' home in Nashville. After returning to his office in LaVergne, Detective Stolinsky received a call from A. B. Collier, a Nashville-based towing company, advising him that an abandoned red Chevrolet Suburban had been located. Detective Stolinsky testified that this vehicle matched the description of the one used in the November 9, 2016 robbery. The vehicle's license plate was registered to William Crockett, the defendant's father. Detective Stolinsky requested that the vehicle be held for him pending a search and contacted Mr. Crockett. Mr. Crockett consented to Detective Stolinsky's request to search the vehicle and was present during the search.

The search of Mr. Crockett's vehicle recovered several documents bearing the defendant's name and his parents' address, as well as a black sock tied in a knot. Upon examination of this sock, Detective Stolinsky discovered that it contained 20 .38 caliber bullets. On November 29, 2016, the defendant was located and arrested at Skyline Medical Center in Nashville. Detective Stolinsky testified that a search of the defendant incident to his arrest recovered a silver mouth grill bearing "dull gold lines between the teeth," along with an LG-model cell phone, which was sent to the Tennessee Bureau of Investigation for a data extraction. Detective Stolinsky testified that this extraction recovered a text message sent to the defendant reading "There are cops at your house. Just a heads up." The text message was dated November 18, 2016.

On cross-examination, Detective Stolinsky noted that the text message recovered from the defendant's cell phone also read "Status: Unread" near its timestamp. He testified that he believed the defendant had been using his father's vehicle for 10 to 15 days prior to November 18, 2016. He was unsure whether other individuals would have had access to the vehicle during this same time period. He testified that though .38 caliber bullets are commonly used for revolvers, they are sometimes used by high-end target shooters in competitions. He also stated that the revolver used in the robbery was never recovered and that he could not identify from the surveillance video footage precisely what type of revolver was used, though he noted that he believed it to be a "snub nose revolver." He also testified that the Vanderbilt baseball cap shown in the surveillance video footage was not recovered.

On redirect examination, Detective Stolinsky averred that the defendant's father did not match the description of the robber involved in the Mapco robbery.

The State rested. After a *Momon* colloquy, the defendant elected not to testify and did not present additional proof. Upon this evidence, the jury convicted the defendant as charged.

During the defendant's November 22, 2021 sentencing hearing, the parties agreed that the defendant was a Range I offender. The defendant requested that the court consider that he had been diagnosed with schizophrenia in the weeks prior to the 2016 robbery but had been receiving effective treatments as of September 2020. The defendant introduced a memorandum from Doctor Jonathan Littman, a neuropharmacologist, in support of this argument. The defendant's counsel also noted that there had been a marked change in the defendant's disposition since the outset of his representation of the defendant. The defendant further introduced as exhibits four letters from his family and pastors to indicate his support from his community. The defendant requested credit be applied to his sentence for the time he had served in incarceration from his November 29, 2016 arrest to his September 22, 2021 conviction.

During his allocution, the defendant apologized for his actions and stated that he wished to repay "the things that I . . . took and stole."

The State introduced as an exhibit a screenshot of a report from the Virginia Judiciary's website showing the defendant's 2008 conviction for robbery, for which the defendant received 10 years of probation. The State contended that the defendant's probation would have ended in 2018 and that because the defendant committed the instant offense in 2016, Tennessee Rule of Criminal Procedure 32(c)(2)(B) required the defendant's 2021 sentence to run consecutively to his 2008 conviction. Consequently, the State argued that the defendant should only receive credit for his time served after the conclusion of his 2008 sentence. The State also introduced as an exhibit the defendant's presentence report and requested that the court consider the defendant's criminal history and the defendant's use of a deadly weapon in the commission of the offense in making its sentencing determination.

The trial court stated that in determining the defendant's sentence, it considered the evidence presented at trial and the sentencing hearing, the defendant's allocution, the general principles of sentencing, arguments regarding sentencing, the nature and characteristics of the criminal conduct involved, mitigating and enhancement factors, statistical information regarding sentencing practices for similar offenses, the defendant's potential for rehabilitation, and the possibility of alternative sentencing.

The trial court found that the defendant had been arrested multiple times, resulting in four violations of his probation in 2014 for domestic violence and failure to appear, among other charges. The trial court, therefore, applied enhancement factor (1), finding that the defendant had "a previous history of criminal convictions or criminal

behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(1). The trial court declined to apply enhancement factor (9), finding that though "[t]he defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense," the defendant's use of a firearm was an element of the aggravated robbery offense for which the defendant was convicted. *Id*. § 40-35-114(9).

The trial court noted that the defendant's 2008 conviction carried an eight-year sentence for which the defendant received 10 years of probation. The trial court found that the effective beginning of the defendant's probation was May 8, 2008, with an effective conclusion on May 8, 2018. Therefore, the trial court applied enhancement factor (13), finding that at the time the felony was committed, the defendant was released on probation for the 2008 conviction. *Id*. § 40-35-114(13)(C). The trial court found no mitigating factors applied; though it noted that the defendant's exhibits could fit within various mitigating factors, the trial court found that they did not lessen the defendant's culpability and thus did not consider them.

The trial court found that the defendant was a Range I standard offender convicted of the Class B felony of aggravated robbery, with a sentence range of eight to 12 years. Applying the above enhancement factors, the trial court sentenced the defendant to 12 years in confinement. The trial court further found Tennessee Rule of Criminal Procedure 32(c)(2)(B) applicable, concluding that because the defendant committed the felony while still on probation for his 2008 conviction, consecutive sentencing was required. Tenn. R. Crim. P. 32(c)(2)(B). Accordingly, the trial court awarded pretrial jail credits to the defendant for his time served only after the conclusion of his prior sentence on May 8, 2018.

Following a timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction for aggravated robbery, the length and consecutive alignment of his sentence, and the award of pretrial jail credit.

## I. Sufficiency of the Evidence

On appeal, the defendant argues that the evidence adduced at trial was insufficient to convict him of aggravated robbery, specifically arguing that the State failed to prove his identity as the perpetrator. The defendant notes that Detective Stolinsky testified that he did not know the caliber of revolver used to commit the robbery and that no revolver was ever recovered in connection with this case. Further, though Detective Stolinsky testified as to the recovery of a hat from the vehicle used in the robbery, the defendant maintains that this hat did not match the Vanderbilt hat shown in the Mapco's surveillance video footage.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As relevant here, an aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" which is accomplished with a deadly weapon. T.C.A. §§ 39-13-401(a), 39-13-402(a)(1). Additionally, "[t]he identity of the perpetrator is an essential element of any crime." *State v. Rice*, 194 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). Whether the State has established the defendant as the perpetrator of the charged offenses beyond a reasonable doubt is "a question of fact for the jury upon its consideration of all competent proof." *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015) (citing *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005)); *accord State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim App. 1982) (citing *Stubbs v. State*, 393 S.W.2d 150, 153 (Tenn. 1965)).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence sufficiently supports the defendant's conviction. Ms. Rembert identified the defendant as the individual who robbed the Mapco store on November 9, 2016. She testified that she clearly viewed his face and noted that he wore a gold or silver grill during the robbery. She also testified that the defendant pointed a firearm at her and ordered her to give him "all the money that you have in your register." Detective Stolinsky testified that he recovered a silver and gold grill from the defendant upon the defendant's arrest. The jury reviewed surveillance video footage of the defendant's use of a firearm in the commission of the robbery. Ms. Rembert also testified that the defendant drove a red Chevrolet, and Detective Stolinsky testified that the defendant was in possession of and using his father's red Chevrolet at the time of the robbery. The jury accredited this evidence and resolved the issue of identity by convicting the defendant of the charged offense.

## II. Sentencing
### A. Length of Sentence

The defendant argues that the trial court erred both in its application of the enhancement factors listed in Code section 40-35-114 and in its imposition of the maximum sentence of 12 years. The State responds that the trial court did not abuse its discretion.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

As a Range I offender, the defendant was subject to a sentencing range of eight to 12 years for aggravated robbery, a Class B felony. *See* T.C.A §§ 39-13-402(b), 40-35-112(a)(2). The trial court imposed the maximum 12-year sentence after articulating its reasons for doing so in accordance with the purposes and principles of sentencing, considering the defendant's potential for rehabilitation and the possibility of alternative sentencing, reviewing the presence and absence of enhancement and mitigating factors, and weighing those factors. Thus, we will review the within-range sentence imposed by the trial court under an "abuse of discretion standard with a presumption of reasonableness." *Bise*, 380 S.W.3d at 708.

The defendant contends that the trial court erred in applying enhancement factor (1) and finding that the defendant had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range" because the defendant had only one prior felony conviction. *See* T.C.A. § 40-35-114(1). Though the defendant is correct that he only had one prior felony conviction, this enhancement factor is not limited to consideration of felony convictions. The defendant's presentence report evidenced, and the trial court considered, a history of prior misdemeanor convictions, including two 2016 convictions for resisting a stop, frisk, halt arrest, or search, one 2014 conviction for domestic violence, one 2014 conviction for failure to appear, one 2014 conviction for driving without a driver's license, two 2012 convictions for casual exchanges, and one 2012 conviction for possession of a weapon with intent to go armed. The record therefore supports the trial court's application of enhancement factor (1).

The trial court also applied enhancement factor (13), finding that the defendant was released on probation from a prior criminal conviction in Virginia at the time he committed the felony. *See id.* § 40-35-114(13)(C). The trial court accredited the State's report from the Virginia Judiciary's website indicating that the defendant had been convicted of felony robbery under Virginia Code section 18.2-58 and sentenced to eight years of incarceration and 10 years of probation. Though the trial court noted that the defendant pled guilty and was sentenced on October 9, 2008, it found "the effective date . . . of the Virginia conviction is May the 8th, 2008." The trial court further found that, in the absence of any evidence indicating that the defendant served this sentence, that his probation was violated, or that his probation ended early, the defendant's "probation would have ended May the 8th, 2018." We agree with the trial court's interpretation of the record. Given that the robbery in the instant case occurred on November 9, 2016, the trial court properly applied enhancement factor (13).

The defendant argues that the trial court erred by imposing the maximum sentence of 12 years because it only considered two enhancement factors and afforded disproportionate weight to enhancement factor (1). Sentencing determinations, however, are made upon consideration of the totality of the circumstances, rather than the number of enhancement or mitigating factors which apply. *See State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986). The trial court is afforded discretion in its consideration of the totality of the circumstances and in the weight it accords to each enhancement factor it determines applicable. T.C.A. § 39-11-403, Sentencing Comm'n Comments. As noted above, the trial court clearly articulated its reasons for applying enhancement factors (1) and (13), and the record supports these reasons. Affording it the presumption of reasonableness, we conclude that the trial court did not abuse its discretion by imposing the within-range sentence of 12 years.

## B. Consecutive Sentencing

The defendant also argues that the trial court erred in requiring him to serve his 12-year sentence consecutively to his 2008 conviction. The State responds that that Tennessee Rule of Criminal Procedure 32(c)(2)(B) required consecutive sentencing because the defendant committed the instant offense before his probation for his 2008 conviction from Virginia had concluded.

The standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences" so long as the trial court articulates on the record the reasons establishing at least one of the grounds listed in Code section 40-35-115(b). *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013).

The trial court imposed consecutive sentences on the grounds of Tennessee Rule of Criminal Procedure 32(c)(2)(B), which provides:

> If, as the result of conviction in another state or in federal court, the defendant has any additional sentence or portion thereof to serve, the court shall impose a sentence that is consecutive to any such unserved sentence unless the court determines in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders.

Tenn. R. Crim. P. 32(c)(2)(B). The defendant contends that the trial court erred in its analysis of the record, arguing that "there is no evidence that the sentence in [the 2008 conviction] was unserved or that any portion was remaining to be served. There is no violation of probation . . . [or] parole." The State responds that there is "no evidence of an agreement to end probation early" and that the defendant's "numerous convictions in Tennessee between 2010 and 2016 demonstrate that he was not in prison in Virginia during that timeframe."

As noted above, we defer to the trial court's conclusion that the defendant's probation for his 2008 conviction concluded on May 8, 2018, and we defer to its conclusion that the defendant committed the instant offense prior to that date. *See* T.C.A. § 40-35-115(b)(6). Though the defendant correctly notes that the report from the Virginia Judiciary's website indicates that a post-trial motion was filed and subsequently withdrawn in 2010 for his 2008 conviction, it does not indicate that this motion concluded the defendant's probation. In the absence of any evidence that the defendant's probation concluded early, we will not read such evidence into the record.

That said, the 10-year probated sentence imposed in Virginia ended in May 2018, while the defendant was sentenced in the instant case on November 22, 2021. Without any effort to revoke the Virginia probation, the Virginia sentence does not qualify as an unserved sentence as defined in Rule 32(c)(2)(B). As such, no sentence remained to serve as a basis for consecutive sentencing. With the paltry state of the record concerning the Virginia sentence, we must conclude that an order for consecutive sentencing was superfluous.

## C. Pretrial Jail Credits

Finally, the defendant argues that the trial court erred in awarding pretrial jail credits only for his time served in incarceration after May 8, 2018, when the trial court determined that the defendant's Virginia probation would have concluded. In support of this argument, the defendant contends that the record is unclear as to whether he had any additional time left to serve on his 2008 conviction and that the trial court "ostensibly applied" his pretrial credit to both the Virginia and Tennessee convictions. The defendant notes that "without any proof that [the defendant] is actually receiving that credit, he is deprived of that credit in both Virginia and Tennessee." The State responds that the record

does not indicate whether the defendant served his eight-year prison sentence in Virginia, though it does show that he was in Tennessee for a portion of that time. The State further argues that the record establishes that the defendant's probation for his 2008 conviction was still in effect when he was arrested on November 29, 2016. The State contends that Tennessee Rule of Criminal Procedure 32 precludes awarding the defendant pretrial jail credits beginning at his 2016 arrest because he still had some portion of his prior sentence left to serve and that the defendant's sentence for his 2021 conviction could not take effect until the conclusion of his 2008 sentence.

Tennessee Code Annotated section 40-23-101 provides, in pertinent part, as follows:

> The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail or juvenile court detention prior to waiver of juvenile court jurisdiction, or county jail or workhouse, pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in the jail, workhouse or penitentiary subsequent to any conviction arising out of the original offense for which the defendant was tried.

T.C.A. § 40-23-101(c). "The purpose of the statute was to provide jail time credit prior and subsequently to conviction for indigents unable to make bond." *State v. Abernathy*, 649 S.W.2d 285, 286 (Tenn. Crim. App. 1983). "The language [of Code section 40-23-101(c)] leaves no room for discretion, and when the word 'shall' is used in constitutions or statutes it is ordinarily construed as being mandatory and not discretionary." *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965). The statute provides that a detainee has "*an absolute right* to credit for time in jail in 'which he was committed pending his arraignment and trial' and 'for the time he served in the jail, workhouse or penitentiary subsequent to any conviction *arising out* of the original offense for which he was tried.'" *Trigg v. State*, 523 S.W.2d 375, 375 (Tenn. Crim. App. 1975) (quoting T.C.A. § 40-23-101(c)) (first emphasis added). "It is only when the time spent in jail or prison is due to or, as the statute says, 'arises out of' the offense for which the sentence against which the credit is claimed that such allowance becomes a matter of right." *Trigg*, 523 S.W.2d at 376. Thus, the trial court is statutorily required to credit the defendant with all time spent in confinement pending arraignment and trial on the offense or offenses that led to the challenged convictions.

On October 9, 2008, the defendant pled guilty to a single count of felony robbery and was sentenced to eight years of imprisonment in Arlington, Virginia. The

record indicates that this sentence was suspended and that the defendant was subsequently sentenced to 10 years of supervised probation. As the State notes, the defendant's presentence report indicates that he was in Tennessee throughout this 10-year sentence. Upon this evidence, the trial court found that the defendant was under a prior conviction at the time of his arrest, finding that the defendant's 10 years of supervised probation would not have concluded until May 8, 2018, 10 years after the date of his initial arrest in Virginia.

The defendant was arrested in this case on the charge of aggravated robbery, not for a violation of his probation in Virginia. The defendant correctly notes that the trial court ostensibly applied the defendant's pretrial credits to his 2008 conviction first, which had flattened at the time of his 2021 sentencing, and then to his 2021 conviction. However, the trial court is without jurisdiction to accredit the defendant's time served arising from a Tennessee arrest and conviction towards an unrelated out-of-state conviction. The defendant has an absolute right to his credit for the time he served in incarceration arising out of the offense for which he was originally arrested, and here, that offense was for aggravated robbery. *Trigg*, 523 S.W.2d at 376. Virginia would not be obligated to respect the trial court's ostensible accreditation for the defendant's time served from November 29, 2016 to May 8, 2018 towards his Virginia conviction. *State v. Larenzo Jerome Morgan, Jr.*, No. W2016-00114-CCA-R3-CD, 2016 WL 5643596, at *3 (Tenn. Crim. App., Jackson, Aug. 2, 2016) (holding that Missouri sentencing laws do not affect previously-entered judgments in Tennessee and "does not bind our courts") (citing *Smith v. McWherter*, 1987 WL 6069, at *2 (Tenn. Crim. App., Jackson, Feb. 4, 1987) (stating that a California court has no power to affect how a defendant's Tennessee sentences would be served)). The trial court noted that it attempted to give the defendant "any potential credit for time that he served in that case in Virginia" based on the evidence before it, but the trial court cannot make that decision for Virginia. To use a rather bucolic parlance, the first horse to the trough gets to drink, and we do not know that the Virginia horse will ever show up.

The sole evidence of the defendant's 2008 conviction was the screenshot from the Virginia Judiciary's website. No judgment forms were entered, and, as both the defendant and the State note, the record is devoid of evidence of violation, revocation, or an agreement to end probation early. Given the strong statutory policy in favor of accreditation for time served arising out of the offense leading to the instant conviction, we cannot say that the record supports the trial court's decision to only accredit the defendant's time served beginning on May 9, 2018, nearly one-and-a-half years after his initial arrest and incarceration.

Accordingly, the provisions of the defendant's judgment relative to consecutive sentencing and his pretrial jail credits are reversed and remanded for entry of a corrected judgment on these issues. The judgments of the trial court are affirmed in all other respects.

_____
JAMES CURWOOD WITT, JR., JUDGE